[No. B003485. Second Dist., Div. Six. Dec. 27, 1984.]

TRUESTONE, INC., Plaintiff and Appellant, v.
SIMI WEST INDUSTRIAL PARK II, Defendant and Respondent.

718

---

**COUNSEL**

Robert F. Peterson, Jr., Peterson, Culp & Neal, Michael Brian Stoker and Kitchen, Turpin & Stoker for Plaintiff and Appellant.

John F. Fay and Loughman & Fay for Defendant and Respondent.

---

**OPINION**

**GILBERT, J.**—Truestone, Inc. (Truestone) seeks to recover the cost of materials delivered and used in construction on real property owned by Simi

West Industrial Park II, aka Atoian & Associates (Atoian). The trial court granted a motion for summary judgment and dismissed the complaint as to Atoian. We reverse the summary judgment as to Truestone's actions to foreclose its mechanic's lien and to recover on an account stated.

## FACTS

On June 9, 1981, Truestone filed a complaint joining an action for breach of contract against Vista Builders, Inc. (Vista) with an action to foreclose a mechanic's lien against Atoian. The first amended complaint filed April 12, 1982, also incorporated common counts for unjust enrichment and an account stated.

In the action to foreclose the mechanic's lien, Truestone alleges that Atoian owned property on Easy Street in Simi Valley and entered a construction contract with Vista, directly or through a general contractor. On August 20, 1979, Vista purchased construction materials worth over $21,000 from Truestone on an open account. Between January 10 and April 30, 1981, Truestone delivered construction materials to the Atoian property where they were used in the work of improvement. Truestone demanded but has received no payment. On January 30, 1981, within 20 days after furnishing materials, Truestone served a preliminary 20-day notice on Atoian and on the construction lender by mail in accordance with Civil Code section 3097.[1] On March 13, 1981, Truestone stopped delivering materials and recorded a verified mechanic's lien claim for the unpaid contract price or the reasonable value of the materials.

Each common count realleges the construction contract between Atoian and Vista, the open account transaction between Vista and Truestone, the delivery and use of the materials, and nonpayment. The first also alleges that Vista became indebted to Truestone for materials delivered at its request and that Atoian was unjustly enriched thereby.

The second further alleges that on January 11, 1982, an account was stated in writing between Atoian and Truestone by a letter incorporated in the complaint. In the letter, Atoian acknowledges that Truestone is a creditor for $17,898 by reason of materials supplied to the development and that Atoian has a plan for settlement of a dispute with one of the contractors which has resulted in a lawsuit against the project and the freezing of construction funds. Atoian proposes to pay Truestone $12,170 in 45 days as full settlement, conditioned upon resolution of its lawsuit and the agree-

---

[1] All statutory references hereinafter are to the Civil Code unless otherwise stated.

ment of at least 80 percent of its creditors to accept similarly reduced payments.

Atoian's answer filed May 11, 1982, admits ownership of the property and the contract with Vista but denies liability and challenges the validity of the mechanic's lien.

On August 31, 1983, Atoian filed a motion for summary judgment. In the motion Atoian claimed that Truestone's failure to give statutory 20-day preliminary notice rendered the mechanic's lien invalid. Grigor Atoian, principal owner of Atoian, alleged in his declaration that he opened all the mail, and that no preliminary notice was served by Truestone. Truestone and its general manager admitted during pretrial discovery that the 20-day preliminary notice was sent by first class regular rather than the required certified/registered mail (§ 3097) and that Truestone had no proof of service (§ 3097.1).

Atoian challenged the unjust enrichment count claiming there was no allegation that it promised to pay Truestone, and no promise may be implied in law where the facts show that Atoian contracted to pay Vista for the materials. To do so would circumvent the mechanic's lien law. Finally, Atoian argued that its letter of January 11, 1982, represented an offer to compromise and was not an account stated. In addition, it also argued that Atoian and Truestone had no prior business transaction(s) with one another.

Hearing was scheduled for September 8, 1983. On September 6, 1983, Truestone opposed the motion. Truestone asserted that the mechanic's lien claim presented a triable issue because Grigor Atoian admitted to Truestone that he received the first 20-day notices sent, and that he knew Truestone was an unpaid materials supplier, thus satisfying the purpose of the statutory notice requirement. In addition, Truestone stated that a triable issue existed with respect to each common count based on Atoian's personal promise to pay Truestone for the materials delivered.

The counterdeclarations show that Truestone's contract administrator became aware on January 3, 1981, that Vista's account was past due. Because Truestone's policy was to stop deliveries on overdue accounts in the absence of a payment arrangement, she told Shawn Campbell, the general manager, about the past due account. On January 5 Campbell telephoned Grigor Atoian. Atoian admitted that Vista had identified Truestone as a supplier and that he had received two 20-day notices Truestone mailed in December 1980 which he discarded because of the incorrect property address. Atoian acknowledged he was having trouble with Vista and said he "would take care of the matter in regard to the money owed" Truestone. He also promised Campbell to "personally pay for the materials supplied to Vista . . . for

said job if TRUESTONE would continue to furnish said materials." Relying on this promise, Truestone authorized and continued to make deliveries of materials to the project. Truestone also mailed corrected 20-day notices to Atoian on January 30 and March 4, 1981, for $12,976 and $5,363.11, respectively.

The trial judge granted the motion for summary judgment, awarded Atoian costs and dismissed Truestone's complaint as to Atoian.

DISCUSSION

I

We are circumspect in our review of motions for summary judgment. Summary judgment may be granted where ". . . all the papers submitted show there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ "It is a drastic remedy eliminating trial and therefore the moving party's declarations must be strictly construed and the opposing party's declaration liberally construed. [Citation.] If there is any issue of material fact to be tried, summary judgment must be denied. [Citation.]" (*Hepp v. Lockheed-California Co.* (1978) 86 Cal.App.3d 714, 717 [150 Cal.Rptr. 408].) Inferences may be drawn from the facts where these are the only reasonable inferences, but the court may not weigh one inference against another or against other evidence, and every reasonable doubt must be resolved in favor of the complaint. (*Hooks v. Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 442 [165 Cal.Rptr. 741].)

Truestone concedes the defective service (§ 3097) and absence of statutory proof of service affidavit. (§ 3097.1.) Section 3097 states that a supplier of materials ". . . must, as a necessary *prerequisite to the validity of any claim of lien,* . . . cause to be given to the owner . . . a written preliminary notice as prescribed by this section." (Italics added.)

■ Because strict compliance with the statute is required, a claim of actual notice or substantial compliance is irrelevant. (*IGA Aluminum Products, Inc. v. Manufacturers Bank* (1982) 130 Cal.App.3d 699 [181 Cal.Rptr. 859].) "[Section 3097] clearly states that proper notice is a prerequisite to perfecting a mechanic's lien, and that if service of the notice is accomplished by mail, the notice must be sent by registered or certified mail." (*Id.* at p. 704.)

In *IGA,* plaintiff, a materialman under a subcontract on a construction project, sued the construction lender to foreclose a mechanic's lien. The

engrossed settled statement stated that the written 20-day notice was defective because it was not delivered by certified or registered mail. Defendant did not acknowledge receipt of the notice. In addition, there was no evidence of a contract between plaintiff and defendant. The court denied plaintiff recovery. ▮▮▮ Here, Grigor Atoian allegedly admitted to Shawn Campbell his knowledge that Truestone supplied materials to the project, and the Atoian company also allegedly made a separate promise to pay Truestone for all materials delivered pursuant to the contract with Vista.

Section 3097 provides an exception to the notice requirement for ". . . one under direct contract with the owner . . ." which the *IGA* court did not reach. This statutory exception is valid because the owner is generally apprised of potential lien claims by those with whom he deals directly, whereas it is difficult for him to learn of potential liens by those not under direct contract. (*Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234 [28 Cal.Rptr. 697, 379 P.2d 1].) The purpose of the statutory notice requirement is to give the owner advance information of the identities of any unpaid claimants who may perfect liens against his property if their debts remain unsatisfied. (*Id.* at p. 240.) Here there is a factual issue concerning the existence of a contract between Truestone and Atoian.

In some cases, even where there is no contractual relationship between the parties, actual knowledge may estop the property owner from asserting the notice requirements of section 3097. The extent of the property owner's knowledge and the time it was acquired may be a significant variable. Section 3129 establishes a presumption that all construction work performed on property with the owner's knowledge "shall be held to have been constructed, performed, or furnished at the instance of such owner . . . ." Therefore, where a work of improvement is completed on leased land under contract with a lessee of the property, a statutory exception to the notice requirement of section 3097 applies.

"The noncontracting owner is placed in the position of a party to the contract by the conclusive presumption that the work was done at his instance and request." (*Halspar, Inc.* v. *La Barthe* (1965) 238 Cal.App.2d 897, 899 [48 Cal.Rptr. 293].) The lessor-owner with actual knowledge may be estopped to deny the validity of the lien because the lessee is viewed as his agent. (*M. Arthur Gensler, Jr. & Associates, Inc.* v. *Larry Barrett, Inc.* (1972) 7 Cal.3d 695, 707 [103 Cal.Rptr. 247, 499 P.2d 503].) Similarly, the lien of a firm which supplied architectural and engineering services to real property under a contract with the original owner-developer is enforceable against the subsequent transferees of the property on an estoppel theory. (*Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.* (1967) 251 Cal.App.2d 347 [59 Cal.Rptr. 587].)

■ Holders of mechanics' liens are protected by constitutional mandate. "The mechanics' lien derives from the California Constitution itself; the Constitution of 1879 mandated the Legislature to grant laborers and materialmen a lien upon the property which they have improved; no other creditors' remedy stems from constitutional command. (See *Martin* v. *Becker* (1915) 169 Cal. 301, 316 [146 P. 665].) Indeed this state, from the earliest days, and consistently thereafter has asserted its interest in protecting the claims of laborers and materialmen. In 1850 the first session of the California Legislature enacted a mechanics' lien law (Stats. 1850, ch. 87, §§ 1-14, at pp. 211-213). Moreover, the courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen. [Fns. omitted.]" (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637].)

■ The policy of the law favors protection of laborers and materialmen. Therefore, an exception to the statutory notice requirement precludes the defeat of the lien on meaningless technicalities where a materialman is known to the property owner and makes deliveries in reliance on his promise to pay. The contractor with whom the materialman originally contracted then stands in a position similar to that of a lessee who contracts for improvements. In neither instance is the property owner prejudiced by lack of notice.

Here, Truestone alleges that Atoian had actual knowledge of Truestone's identity in December 1980, and in January 1981 expressly promised to pay Truestone for all past and future deliveries of materials pursuant to the Vista contract. ■ Evidence of defendant's promise to pay is admissible in an action to foreclose a mechanic's lien, which may be amended to show the existence of an express contract. (*Castagnino* v. *Balletta* (1889) 82 Cal. 250 [23 P. 127]; *Hollywood Elect. Co.* v. *Jack Baskin, Inc.* (1956) 146 Cal.App.2d 399, 404 [303 P.2d 1049].) ■ At a minimum, triable issues of fact exist with respect to Atoian's knowledge and its promise which, if found to be true, relieve Truestone of the obligation to show strict compliance with the statutory notice requirement of the mechanics' lien law.

II

■ The common count does not state a cause of action for unjust enrichment against Atoian. Truestone alleges that it fully performed its contract with Vista by delivering the materials which were used in construction on Atoian's property, and seeks to establish an implied promise by Atoian to pay Truestone to avoid unjust enrichment. There is no allegation that Atoian promised to pay Truestone, or that Atoian did not pay Vista.

The theory of quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value. (*Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325, 340 [263 P.2d 655].) Truestone argues that since a mechanic's lien is not an exclusive remedy, the claimant is entitled to join common counts against the contractor or property owner. (§ 3152.) Truestone asserts that an action for unjust enrichment is an appropriate remedy to recover the reasonable value of services performed (or materials delivered) at the request of another in reasonable reliance that the person will pay. (*Earhart* v. *William Low Co.* (1979) 25 Cal.3d 503 [158 Cal.Rptr. 887, 600 P.2d 1344].) The *Earhart* case dealt with a quantum meruit action where defendant's express promise to pay the contractor was alleged and proved. The contractor was permitted to recover on the defendant's promise, even though the services conferred a benefit, in part, on property not owned by the promisor.

Truestone, by contrast, alleges unjust enrichment in conclusory terms. It now seeks to rely on an oral promise by Atoian which the complaint does not allege. The allegations of counterdeclarations may not be used to compensate for defects in the complaint. ■ The counterdeclarations on a summary judgment motion " '. . . may not create issues outside the pleadings; are not a substitute for an amendment to the pleadings; and are an ineffective defense to the motion unless they "set forth facts showing that . . . a good cause of action exists upon the merits." ' [Citation.]" (*Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [107 Cal.Rptr. 583].)

■ A subcontractor, who has no direct contractual relationship with the property owner, may generally not recover on an unjust enrichment theory for benefits conferred on the property. (*Rogers* v. *Whitson* (1964) 228 Cal.App.2d 662, 673 [39 Cal.Rptr. 842].) In the *Rogers* case, the defendant property owner, who had paid the contractor for the work before plaintiff subcontractor brought the action, was not unjustly enriched. Neither party has referred us to other California authority on this issue, and we have found none. This principle is, however, widely accepted. (*Pendleton* v. *Sard* (Me. 1972) 297 A.2d 889 [62 A.L.R.3d 277]; Annot., Subcontractor's Recovery Against Owner (1975) 62 A.L.R.3d 288; and subsequent cases.) We conclude that no triable issue of fact is presented by the unjust enrichment action.

## III

■ Truestone contends that the account stated is adequate because it shows a debt of a sum certain ($17,898), consideration, and nonpayment

after demand. (*Allen* v. *Powell* (1967) 248 Cal.App.2d 502 [56 Cal.Rptr. 715, 29 A.L.R.3d 1218].) Atoian argues that the letter of January 11, 1982, is not an account stated because the parties had no prior business transactions. This preempts the issue. Shawn Campbell alleges that on January 5, 1981, Atoian personally promised to pay Truestone for materials and therefore Truestone made additional deliveries and mailed Atoian two 20-day notices for $12,976 and $5,363.11. The total is $18,339.11. The Atoian letter acknowledges a debt of $17,898. The striking similarity of these balances is beyond coincidence.

■ To have an account stated, "it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be owing." (*H. Russell Taylor's Fire Prevention Service Inc.* v. *Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 726 [160 Cal.Rptr. 411].) ■ "An account stated is an agreement based on the prior transactions between the parties, that the items of the account are true and that the balance struck is due and owing from one party to another. [Citations.] When the account is assented to, '"it becomes a new contract. . . ."'" (*Gleason* v. *Klamer* (1980) 103 Cal.App.3d 782, 786 [163 Cal.Rptr. 483].)

The trial court granted the motion for summary judgment without stating reasons. In the absence of a showing of prejudice or a ruling granting a motion to strike, Truestone's tardily filed counterdeclarations are a part of the record. ■ Shawn Campbell's counterdeclaration on its face raises a triable issue of fact concerning the existence of prior business transactions between the parties. This is the sole purpose of declarations and counter declarations on a summary judgment motion.

Atoian further argues that because its 1982 letter is an offer to compromise, it is inadmissible as an admission of liability, even though it is an offer to settle a different lawsuit. (Evid. Code, § 1152; Witkin Cal. Evidence (2d ed. 1966) §§ 378, 382, p. 336-339.) The Atoian letter may nonetheless be admitted as an admission against interest, independent of the compromise offer. ■ "[T]he statements of a party against whom a claim is made, that he is willing to settle the claim, when not connected with an offer in compromise, may be proved as an admission against interest." (*Moving Pictures etc. Union* v. *Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 402 [86 Cal.Rptr. 33], citing *People* ex rel. *Dept. Public Works* v. *Forster* (1962) 58 Cal.2d 257, 263 [23 Cal.Rptr. 582, 373 P.2d 630].) *Glasgow Theaters* admitted the offer to show an accord and satisfaction. Here it is being introduced to show an account stated.

■ Although Atoian's letter may not qualify as an account stated, because its purpose is to achieve settlement of a different lawsuit, it may nonetheless evidence the existence of an account stated, which need not be in writing. (*Mitchell* v. *Fleming* (1926) 77 Cal.App. 241 [246 P. 152]; *Fogarty* v. *McGuire* (1959) 170 Cal.App.2d 405, 407 [338 P.2d 992].)
■ An account stated need not be submitted by the creditor to the debtor. A statement expressing the debtor's assent and acknowledging the agreed amount of the debt to the creditor equally establishes an account stated. (*Levy* v. *Prinzmetal* (1955) 134 Cal.App.2d Supp. 919 [286 P.2d 1023]; *Zinn* v. *Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600 [76 Cal.Rptr. 663, 46 A.L.R.3d 1317].)

■ The Atoian letter declares no contingency as to the existence of the underlying debt or its amount ($17,898). (*Konda* v. *Lamkin* (1937) 19 Cal.App.2d 635, 639 [66 P.2d 164].) Assuming that Atoian agreed to accept past and future materials deliveries on an open account, in the same manner as Vista, the entire series of transactions could be reflected in a single balance struck between the parties. Since an account stated may be implied from the circumstances, the letter presents a triable issue based on the showing of an agreement. (*California Bean Growers Assn.* v. *Williams* (1927) 82 Cal.App. 434, 442 [255 P. 751].) The effect of the letter remains to be determined at a trial on the issues. (*People* ex rel. *Dept. Public Works* v. *Forster, supra,* 58 Cal.2d 257, 263; *Moving Pictures etc. Union* v. *Glasgow Theaters, Inc., supra,* 6 Cal.App.3d 395.)

Because triable issues of fact exist with respect to the mechanic's lien and account stated, the trial court abused its discretion in granting Atoian's motion for summary judgment on those causes of action. We affirm the summary judgment on the cause of action for unjust enrichment. We reverse with respect to the mechanic's lien and the account stated and order the complaint reinstated as to Atoian on those causes of action.

Stone, P. J., and Abbe, J., concurred.